O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| S. Eagle | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

Attorneys **NOT** Present for Plaintiffs:     Attorneys **NOT** Present for Defendants:

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

## I.     INTRODUCTION

On December 13, 2007, Plaintiff-Intervenor American International Specialty Lines Insurance Company ("AISLIC") filed an intervenor complaint against Defendant United States of America ("USA") stating claims for response costs incurred under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § § 9601-9675, related to perchlorate contamination at the Whittaker-Bermite Site ("Site") in Santa Clarita, California. (Doc. No. 74.)  In its Complaint, AISLIC alleges that USA is liable under CERCLA as a former owner, operator and arranger at the Site.  On June 17, 2009, USA filed its motion for partial summary judgment regarding operator liability ("Motion").[1]  (Doc. No. 141.)  On July 6, 2009, AISLIC filed its opposition to

---

[1] USA is not moving for summary judgment on the "owner" or "arranger" liability counts alleged in the Complaint. (Motion at 1.)  The Court denied AISLIC's motion for partial summary judgment regarding USA's owner, operator and arranger liability.  (Doc. No. 165.)

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

USA's motion ("Opposition"). (Doc. No. 149.) On July 13, 2009, USA filed its reply to AISLIC's Opposition ("Reply"). (Doc. No. 155.) For the following reasons, this Court GRANTS USA's motion.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed. The Site at issue in this case is located on approximately 996 acres, at 22116 Soledad Canyon Road in Santa Clarita, California. (USA's Separate Statement of Uncontroverted Facts in Support of its Motion for Summary Judgment ("SUF") ¶ 1.) Perchlorate has been found in the soil and groundwater at the Site.[2] (SUF ¶ 2.) From 1942 to 1967, Bermite Powder Company ("Bermite") owned and operated the Site, manufacturing flares, photoflashes, and other explosive materials. (SUF ¶ 4.) Whittaker Corporation ("Whittaker") acquired Bermite and began operations at the Site in 1967, manufacturing such items as powder charges for commercial use and rocket motors for the military. (SUF ¶ 5.) Whittaker was not required to work on USA contracts. (SUF ¶ 6.)

USA claims that Whittaker was responsible for directing, managing, and controlling all day-to-day operations at the Site, including operations involving waste disposal. (SUF ¶ 7.) AISLIC disputes this fact, citing to the Department of Defense ("DOD") Contractors' Safety Manual for Ammunition, Explosives, and Related Dangerous Material (October 1968) ("DOD Safety Manual") and the

---

[2]According to Defendant, Perchlorate is a naturally occurring and man-made chemical that is used in the manufacture of rocket propellant, explosives, fireworks and flares. (Motion at 3.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

presence of government inspectors at the Site. (AISLIC's Statement of Genuine Issues and Additional Material Facts ("SGI") ¶ 7.) USA claims that Whittaker exercised "full managerial authority" over waste disposal at the Site. (SUF ¶ 8.) AISLIC, again, disputes this fact citing again to the DOD Safety Manual and the presence of government inspectors. (SGI ¶ 8.)

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 56(c)

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

## B. CERCLA Liability

Congress enacted CERCLA in 1980 "in response to the serious environmental and health risks posed by industrial pollution." *Burlington Northern & Santa Fe Railway Company v. United States*, – U.S. – , 129 S. Ct. 1870, 1874 (2009). "The Act was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Id.*

In order to establish USA's liability under CERCLA, AISLIC must prove four elements: (1) perchlorate is a hazardous substance; (2) there has been a release of perchlorate at the Site; (3) the release or threatened release caused AISLIC to incur necessary response costs consistent with the NCP; and (4) USA is within one of four classes of persons subject to CERCLA liability provisions. *See Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1059 (C.D. Cal. 2003), citing *Carson Harbor Village Ltd. v. Unocal Corp.*, 270 F.3d 863, 870-71 (9th Cir. 2001).[3]

CERCLA imposes strict liability for environmental contamination on "four broad classes" of potentially responsible parties ("PRPs"):

(1) the owner and operator of a vessel or facility,

---

[3] Consistency with the National Consistency Plan ("NCP") is not an element of CERCLA liability, but can be a factual issue affecting which response costs the plaintiffs may recover. *See Basic Management v. United States*, 569 F. Supp. 2d 1106, 1121 (D. Nev. 2008). The Court denied AISLIC's summary judgment motion as to NCP consistency. (Doc. No. 164.)

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which caused the incurrence of response costs, of a hazardous substance . . .

*Burlington*, 129 S. Ct. at 1878, citing 42 U.S.C. §9607(a).

CERCLA creates two different kinds of actions for the recovery of response costs: (1) a suit to recover costs solely under § 107 of CERCLA; and (2) a contribution claim governed by § 113 of CERCLA.  42 U.S.C. § § 9607, 9613.

### 1. *Operator Liability*

The Supreme Court clarified the standard for CERCLA operator liability in *United States v. Bestfood*, 524 U.S. 51 (1998).  In assessing the liability of a parent corporation for the actions of its subsidiary, the Court stated:

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

> [U]nder CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for the purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*Id.* at 66-67 (1998). The analysis of whether a party is the "operator" rests on the relationship between that party to the facility itself. *Id.* at 68.

    The Ninth Circuit recognizes two theories on which operator liability may be premised. The first theory is the "authority to control test" explained in *Kaiser Aluminum v. Catellus Development Corp.*, 976 F.2d 1338 (9th Cir. 1992). *See Washington v. United States*, 940 F. Supp. 474, 483 (W.D. Wash. 1996). Under the "authority to control test," operator liability attaches "if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment." *Kaiser*, 976 F.2d at 1341. The second theory is the "actual control" standard articulated in *Long Beach Unified School Dist. v. Dorothy B. Godwin California Living Trust*, 32 F.3d 1364 (9th Cir. 1994). *See Washington*, 940 F. Supp. at 483. Under the "actual control" standard, to be an operator of a facility, an entity "must play an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management." *Long Beach*, 32 F.3d at 1367.

    Some district court cases in the Ninth Circuit have amplified on these standards. In *Couer D'Alene Tribe v. Asarco Inc.*, the district court explained that

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

"[f]or operator liability, there must be some nexus between that person's or entity's control and the hazardous waste contained in the facility." 280 F. Supp. 2d 1094, 1127 (D. Idaho 2003). Morever, "[t]he test for control uses a totality of the circumstances standard." *Cadillac Fairview v. Dow Chemical Co.*, 1997 U.S. Dist. LEXIS 308, *64 (C.D. Cal. Feb. 19, 1997), quoting *Elf Atochem N. Am. v. United States*, 914 F. Supp. 1166, 1170 (E.D. Pa. 1996). "A party can be liable as an Operator under CERCLA if it has 'substantial control' over operations, such as day to day management or actual high-level control over management and decision making,' as long as the control is pervasive." *Cadillac Fairview*, 1997 U.S. Dist. LEXIS at *64, quoting *Elf Atochem*, 914 F. Supp. at 1171. As such, the relevant question is "under the totality of the circumstances which existed [at the time of the pollution] did the government 'manage, direct or conduct operations specifically related to pollution'" at the Site? *Couer D'Alene Tribe*, 290 F. Supp. 2d at 1127. Moreover, "[b]ased on the broad remedial nature of CERCLA, the term 'operator' should not be limited to the primary or most responsible person or entity, but everyone who is potentially responsible." *Coeur D'Alene Tribe*, 290 F. Supp. 2d at 1127.

In *Cadillac/Fairview*, the Ninth Circuit affirmed the district court's imposition of liability on the United States as owner, operator, and arranger**,** resulting from soil pollution stemming from wartime manufacture of synthetic rubber. *Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 299 F.3d 1019 (9th Cir. 2002). The court explained that while Dow actually disposed of the waste and exercised some discretion in how it did so, the government's involvement was pervasive. *See id.* at 1026. The court explained: "the government owned the site, the pits, the plant, and all materials including the wastes, knew just what Dow was doing, had unfettered control over it, approved of it, had an agency relationship

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

with Dow that would ordinarily require it to indemnify Dow for what it did, and had made an express written promise to hold Dow harmless for whatever it did." *Id.*

In *FMC v. United States Department of Commerce*, the Third Circuit Court of Appeals affirmed the district court's holding that the Government was the operator of the facility at issue. 29 F.3d 833, 845 (3d Cir. 1994) (en banc). In *Washington v. United States*, 930 F. Supp. 474, 484 (W.D. Wash. 1996), the Western District of Washington discussed the *FMC* holding in depth. The district court in *Washington* explained that *FMC* applied the "actual control" test and concluded that the Government had substantial control over FMC because: "(1) FMC's predecessor during the war years would not have been manufacturing high tenacity rayon but for the Government's direction, and the Government also pressured the company to increase production, thereby increasing the amount of resulting toxic waste; (2) the company was subject to Government regulations, on-site inspections, and the possibility of seizure; (3) the Government built plants supplying raw materials to American Viscose; (4) the Government supplied machinery and equipment for use during the manufacturing process; and (5) the Government controlled product marketing and price." *Washington*, 930 F. Supp. at 484. The district court also focused on the four-judge dissent in the twelve-judge en banc decision in *FMC*. *Id.* at 484. The *FMC* dissent explained that "when Congress used the word 'operator,' it did not have in mind a governmental entity whose economic interest and involvement in a production facility was limited to that of a regulator and ultimate consumer." *Id.*

In *Washington*, the district court held that the United States was not the operator of the shipyard at issue in the case. 930 F. Supp at 485. The court relied

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

on the following factors: (1) Winslow Marine conducted the shipyard's operations, and generated and handled wastes in the same way it had before the War, the Government not having required any changes in these procedures; and (2) the Government's inspectors and accountants were primarily concerned with efficiency and cost control, and had no responsibility for directing activities that led to the deposit of wastes. *Id.* at 485. The court explained that the application of *FMC* was "somewhat tainted" by the Third Circuit's reliance on elements evidencing unexercised authority to control, such as the seizure of the plant. *Id.* The court explained that viewing "the totality of the evidence", the Government "cannot be considered to have been actively involved in the day-to-day activity that produced the contamination." *Id.*

In *Rospatch Jessco Corporation v. Chrysler Corporation*, a Michigan district court granted the Government's motion for summary judgment as to operator liability under the actual control test. 962 F. Supp. 998 (W.D. Mich. 1995). In *Rospatch*, both K-F Corporation and KMC owned the plant and manufactured airplane engines pursuant to contracts with the United States. The court explained that the following factors indicated a heightened level of government involvement: (1) K-F borrowed significant amounts of money from the Government, which required K-F to make diligent efforts to obtain defense contracts by limiting the production of automobiles; (2) the Government provided KMC much of the equipment and machinery needed to produce the engines; (3) the Air Force had many representatives at the plant while government-owned equipment was being installed and it maintained one representative with an office at the plant during KMC's performance of the contract; and (4) the Air Force determined whether they would compensate KMC's employees for overtime. *Id.* at 1005. The court also listed factors indicating a lack of substantial control: (1) the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

Government did not force K-F to produce the engines and K-F sought the work; (2) there was no evidence that the Air Force impinged on KMC's management of its operations and the evidence showed that the management decisions were made exclusively by KMC; (3) there was no indication that the Government involved itself in the manner of KMC's production of the engine, except inasmuch as the specifications mandated specific production method; (4) KMC's own procurement department purchased supplies ancillary to the production of the engines. *Id.* at 1005-06. Having weighed the factors, the court concluded that the "Air Force did not exercise substantial control over, or actively involve itself in, the activities of KMC." *Id.* at 1006.

The district court in *Coeur D'Alene Tribe* determined that the United States was not liable as an operator under CERCLA for its contract involvement with mining companies during World War II. *See* 280 F. Supp. 2d 1094. The court explained that there was a "lack of actual managerial control over the mines" by the Government. *Id.* at 1129. Moreover, the court explained, "the threat of seizure" did not support a finding of liability "where such a threat was never triggered." Distinguishing *FMC*, the court explained:

> the mining companies maintained actual control over the mines and mills; the mining companies hired and fired and supervised employees; the mining companies voluntarily decided to mine for metals and to participate in the premium price plans and quotas; the mining companies owned the equipment used in the mines and mills; the government set the price for metals, but did not control who could purchase the metals at the given prices; and the mining companies controlled the mechanisms creating the tailings and the disposal of the tailings.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

*Id.* at 1130.  Applying the actual control test in *Bestfoods*, as well as the broader "authority to control" test, the court concluded that the United States was not the operator.  *Id.*

## IV.  ANALYSIS

USA contends that summary judgment is appropriate because the undisputed evidence reveals that Whittaker was responsible for and managed or directed all of the operations at the Site, including waste disposal.  AISLIC contends that in every contract with Whittaker, USA included language that required Whittaker to adhere to the requirements in DOD's Safety Manual, which set forth the criteria Whittaker was to follow with regard to waste management and disposal at the Site.  Therefore, AISLIC contends, by incorporating the DOD Safety Manual into the contracts, USA created a genuine issue of material fact as to whether it controlled the generation and disposal of wastewater at the Site.  The Court concludes that USA has satisfactorily demonstrated that there are no genuine issues of material fact as to its operator liability.  *See Anderson*, 477 U.S. at 256.

First, USA contends that, as a matter of law, this Court should conclude that Whittaker was the operator of the Site because it exercised complete managerial control and supervision over all aspects of waste-disposal at the Site and because its employees actually collected, transported and disposed of all waste generated by Whittaker's manufacturing operations.  (Motion at 5.)  USA stresses that Douglas Moore –Whittaker's President–confirmed that USA played "no operational role" in directing personnel at the Site, Whittaker drafted its own environmental handbook directing its employees on how to perform their waste disposal duties, Whittaker controlled waste disposal at the "burn pit" and "hog-out area," and Whittaker controlled wastewater disposal at the Site.  For these reasons, USA argues,

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

Whittaker alone was the operator of the Site. (Motion at 6-12; SUF¶¶ 9, 20, 24, 61.) As USA correctly contends, AISLIC fails to demonstrate that any of these facts is genuinely in dispute. AISLIC does not deny that Whittaker was an operator of the Site (Opposition at 9), but rather argues that, through the implementation of the DOD Safety Manual into its contracts, USA so pervasively "directed" Whittaker's pollution operations–specifically its burning and disposal requirements–that USA is also liable as an operator. (Opposition at 10.) The Court rejects this argument.

The DOD Safety Manual itself makes clear that it provides nothing more than basic safety guidance for facilities such as the Site. (Declaration of Daniel F. Mulvihill, Esq. In Support of AISLIC's Opposition ("Mulvihill Declaration"), Ex. 1.) Thus, contrary to AISLIC's contention, in no way did it direct Whittaker's employees as to their actions regarding waste disposal. Even accepting AISLIC's contention that the DOD Safety Manual did direct Whittaker employees as to how to perform their waste disposal duties, courts have consistently held that contract provisions, specifications, and even mandates similar to those expressed in the DOD Safety Manual are insufficient to show "direction" or "control" over waste disposal for purposes of establishing operator liability. *See, e.g., Miami-Dade County, Fla. v. United States,* 345 F.Supp.2d 1319, 1344-46 (S.D. Fla. 2004) (holding that military specification MIL-Q-9858A, which details a contractor's inspection and quality control responsibilities, did not amount to direction of plaintiff's waste disposal practices and thus did not make the Government liable as an operator); *see also Coeur D'Alene Tribe*, 280 F. Supp. 2d at 1128-30 (noting that there was no operator liability against the United States even where the "directives of the federal government were mandated and compliance was not voluntary."). Thus, AISLIC's continued reference to the DOD Safety Manual does

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

not provide evidence that USA exercised such pervasive control at the Site so as to create a genuine issue of material fact as to whether USA was an operator of the Site.

Nevertheless, relying on *Cadillac Fairview,* AISLIC argues that this Court should deny USA's motion not only because USA incorporated the provisions of the DOD Safety Manual into its contracts with Whittaker, but because the DOD Safety Manual "directed [Whittaker] to burn" the pechlorate waste, therefore demonstrating that USA had the authority to control decisions as to how to dispose of waste so as to make it liable as an operator. However, AISLIC's proffered evidence of USA's alleged control is distinguishable from *Cadillac/Fairview*. The Government's involvement in *Cadillac/Fairview* was pervasive: it directly participated in decisions about the disposal of waste by studying the manufacturer's waste pits and approving them. *See Cadillac/Fairview*, 299 F.3d at 1024. Furthermore, the Government had agreed to indemnify the chemical company. *See Cadillac/Fairview*, 299 F.3d at 1026. Here, Whittaker alone obtained the permits necessary for burning waste, its safety personnel chose the location of and decided how often burns would be conducted in the burn pit**,** and there is no evidence that Whittaker was required to obtain permission from USA or to report the amount of waste it was burning at the Site. (SUF ¶ ¶15, 18-20.) Furthermore, USA's role at the Site appears to be much more similar to the Government's role in *Washington*, 930 F.Supp. 474, *Rospatch*, 962 F. Supp. 998, and *Coeur D'Alene Tribe*, 280 F. Supp. 2d 1094, where the courts held that the Government was not liable as an operator.

AISLIC also contends that summary judgment is inappropriate because USA–through DOD–assigned Safety Inspectors to the Site to ensure that Whittaker complied with the DOD Safety Manual. However, nothing in the record indicates

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

that any of the Safety Inspectors participated in Whittaker personnel's waste disposal decision-making process.  From what USA has demonstrated, the inspectors were only at the Site to monitor Whittaker's contractual performance and to ensure that the products Whittaker manufactured met USA's specifications.  (*See* SUF ¶¶ 12, 14, 17, 22, 31, 54.)  As USA correctly contends, this activity does not indicate the type of control articulated in cases finding operator liability.  *See Miami Dade,* 345 F. Supp.2d at 1343 (holding that the government was not liable as an operator, in part because it "had no objective. . .other than to enforce. . .contract provisions by ensuring the delivery of quality products in accordance with the terms of the contract.").

AISLIC next contends that this Court should deny USA's motion because by granting Whittaker a license to take its waste to Fort Irwin in the mid 1970s and then "unilaterally terminat[ing] Whittaker's authorization to burn off-site when Fort Irwin closed in 1980," USA controlled and directed waste disposal at the Site and is thereby liable as an operator.  In obtaining permission to burn at Fort Irwin, Whittaker was disposing of waste for which it was responsible.  (AISLIC SOF ¶¶88, 91.)  After Fort Irwin was no longer available, Los Angeles County and the State Air Quality Management District limited Whittaker's ability to burn waste at the Site.  (Opposition at 12-13.)  Whittaker then turned to USA for assistance in finding a place to burn the waste.  *Id.*  USA allowed Whittaker to take its waste to China Lake.  *Id.*  In *United States v. Dart Indust., Inc.,* 847 F.2d 144 (4th Cir. 1988), the South Carolina Department of Health and Environmental Control ("DHEC") allowed a chemical company to store and dispose of waste at a facility, approved applications for such storage, inspected the facility and required proper transportation of waste to the facility.  *Dart,* 847 F.2d at 145.  The Fourth Circuit concluded that because the DHEC had not gone beyond "governmental

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4686 AHM (RZx) | Date | 11/10/09 |
|---|---|---|---|
| Title | STEADFAST INSURANCE COMPANY v. UNITED STATES OF AMERICA, *et al.* | | |

supervision" and "directly managed" the chemical company's operations, it was not an operator under CERCLA. *Id.* at 146. Similarly, here, USA's response to Whittaker's requests for assistance in locating an alternative location to dispose of its waste after Fort Irwin had been closed does not constitute management, control or supervision over Whittaker's disposal operations at the Site so as to make USA an operator under CERCLA.

Therefore, because the undisputed facts reveal that USA has neither "manage[d], direct[ed], [n]or conduct[ed] operations specifically related to pollution," *Bestfoods*, 524 U.S. at 67, the Court GRANTS USA's motion for partial summary judgment precluding it from being held liable on the basis of operator liability.

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

This Order is not intended for publication or for inclusion in the databases of Westlaw or LEXIS.

                                                                                                                      :  _____

                                                                                Initials of Preparer         se