

1  SCOTT L. DAVIS (Pro Hac Vice)
   sdavis@gardere.com
2  Gardere Wynne Sewell LLP
   1601 Elm Street, Suite 3000
3  Dallas, TX 75201
   Telephone (214) 999-3000
4  Facsimile: (214) 999-4667

5  Attorneys for Plaintiff American International Specialty Lines Insurance Company

6  SAM HIRSCH
   Acting Assistant Attorney General
7  Environment & Natural Resources Division

8  MICHAEL C. AUGUSTINI (DC Bar No. 452526)
   michael.augustini@usdoj.gov
9  MARTHA C. MANN (FL Bar No. 1559050)
   martha.mann@usdoj.gov
10 U.S. Department of Justice
   P.O. Box 7611
11 Washington, DC 20044-7611
   Telephone:  (202) 616-6519
12 Facsimile:  (202) 514-8865

13 Attorneys for Defendant United States of America

14

15                    UNITED STATES DISTRICT COURT

16                    CENTRAL DISTRICT OF CALIFORNIA

17 AMERICAN INTERNATIONAL          )  Case Nos. CV-06-4686 GHK (RZx), and
   SPECIALTY LINES INSURANCE       )  CV-09-1734 GHK (RZx)
   COMPANY,                        )
18                                 )
                                   )  **[PROPOSED] CONSENT DECREE**
19        Plaintiff,               )
                                   )
20             v.                  )
                                   )
21                                 )
   UNITED STATES OF AMERICA,       )
22                                 )
                                   )
23        Defendant.               )
                                   )
24 _____  )

25      This Settlement Agreement and Consent Decree ("Agreement" or "Consent

26 Decree") is made by and between Plaintiff American International Specialty Lines

27 Insurance Company, n/k/a AIG Specialty Insurance Company ("AISLIC"), and

28
                                    1
---
                      **[PROPOSED] CONSENT DECREE**

Defendant United States of America ("United States"), collectively referred to as "the Parties";

WHEREAS, AISLIC provided certain insurance coverage to Whittaker Corporation ("Whittaker"), pursuant to Pollution Legal Liability Select/Cleanup Cost Cap Insurance Policy Number PLS 267-9186 (the "Policy"), and AISLIC alleges, inter alia, that it is subrogated to Whittaker's rights to recover all payments that AISLIC has made or makes under the Policy;

WHEREAS, in December 2007, AISLIC intervened in an existing action captioned Steadfast Ins. Co. v. United States of America, CV-06-4686 AHM (RZx) (C.D. Cal.), and asserted claims under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-75, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) ("CERCLA"), seeking to recover from the United States certain costs that AISLIC paid or was obligated to pay in connection with a site formerly owned and operated by Whittaker in Santa Clarita, California (the "Bermite Site");

WHEREAS, in March 2009, AISLIC filed a second action captioned American Int'l Specialty Lines Ins. Co. v. United States of America, CV-09-1734 AHM (RZx) (C.D. Cal.), asserting additional CERCLA claims against the United States for AISLIC's alleged costs in connection with the Bermite Site, and this Court consolidated AISLIC's two CERCLA actions (the "Consolidated Actions");

WHEREAS, on January 31, 2013, the Court entered a final judgment in the Consolidated Actions;

WHEREAS, in March and April 2013, AISLIC and the United States filed notices of appeal in the Consolidated Actions to the United States Court of Appeals for the Ninth Circuit, see Dkt. Nos. 13-55518, 13-55521, 13-55593, 13-55595, and the Parties have agreed to dismiss their respective cross-appeals on the condition that the Court approve this Agreement as a Consent Decree;

**[PROPOSED] CONSENT DECREE**

1    WHEREAS, AISLIC and the United States desire to enter into this Agreement
2 to fully and finally resolve AISLIC's claims relating to the Policy and the Bermite
3 Site, and to avoid the complication, risks, and expense of further litigation and
4 appeals;

5    WHEREAS, the United States enters into this Agreement as a final settlement
6 and compromise of all claims as set forth herein and does not admit any liability
7 arising from occurrences or transactions pertaining to the Bermite Site; and

8    WHEREAS, AISLIC and the United States agree that this Agreement is fair,
9 reasonable, and in the public interest;

10    NOW, THEREFORE, IT IS AGREED AND ORDERED that:

11    1.    <u>Application of this Agreement</u>.  This Agreement applies to, is
12 binding upon, and inures to the benefit of AISLIC and the United States.  This
13 Agreement does not extend to or inure to the benefit of any party, person, or entity
14 other than AISLIC and the United States, except as expressly provided herein, and
15 nothing in this Agreement shall be construed to make any other person or entity not
16 referenced in this Agreement a third-party beneficiary to this Agreement.

17    2.    <u>Definitions</u>.  Whenever the terms listed below are used in this
18 Agreement, the following definitions shall apply:

19    a.    "Agreement" shall mean this Consent Decree.

20    b.    "Bermite Site" shall mean, for purposes of this Agreement, the
21 approximately 1,000 acres located, in part, at 22116 Soledad Canyon Road, Santa
22 Clarita (formerly Saugus), California as well as the areal extent of contamination
23 resulting from activities on that property.  This term also includes, without limitation,
24 any manufacturing facilities, waste disposal areas, storage areas, buildings,
25 equipment, structures, roads, ditches, culverts, pipes, and other facilities located upon,
26 connected to, or associated with activities upon or related to the above described
27 approximately 1,000 acres.  The Bermite Site shall not include any other sites covered
28 by or subject to the Policy.

c.   "Consolidated Actions" shall mean the matters captioned as <u>Steadfast Ins. Co. v. United States of America</u>, CV-06-4686 AHM (RZx) (C.D. Cal.), and <u>American Int'l Specialty Lines Ins. Co. v. United States of America</u>, CV-09-1734 AHM (RZx) (C.D. Cal.).

d.   "Covered Matters" shall mean any and all claims, known or unknown, that were, could have been, could now be, or hereafter could be asserted by AISLIC against the United States in the Consolidated Actions pursuant to the rights afforded AISLIC by virtue of, or arising through, the Policy, or otherwise, relating to the Bermite Site, including all claims relating to any environmental conditions at the Bermite Site, any release of a hazardous substance at the Bermite Site and any off-site contamination emanating from the Site.  Covered Matters do not include:  (i) any and all claims or causes of action that could be asserted by AISLIC with respect, or related in any way, to environmental conditions at sites other than the Bermite Site; or (ii) any and all claims or causes of action related to the Bermite Site that could be asserted by any party other than AISLIC, including but not limited to Whittaker Corporation or Chubb Custom Insurance Company.

e.   "Day" shall mean a calendar day.  In computing any period of time under this Agreement, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday, or Federal holiday.

f.   "Effective Date" shall mean the date the Court approves this Agreement.

g.   "Federal Contract" means any prime contract, subcontract, or any other agreement transferring value between, on the one hand, a party to this Consent Decree or a company insured by a party to this Consent Decree, and a department, agency, or instrumentality of the United States, including but not limited to, contracts for goods or services, grants, and cooperative agreements.  The term "Federal Contract" does not include this Consent Decree.

**[PROPOSED] CONSENT DECREE**

1m

h.     "Future Response Costs" shall mean, for purposes of this Agreement, those necessary costs of response, as defined in 42 U.S.C. § 9601(25), paid by AISLIC on or after February 1, 2010 under the Policy, which are consistent with the National Contingency Plan ("NCP") and arise out of any releases or threatened releases of hazardous substances at or emanating from the Bermite Site that are attributable to the former manufacturing operations at the Bermite Site. "Future Response Costs" shall not include any additional payment obligations AISLIC assumed, or may assume, that are unrelated to coverage for the Bermite Site under the Policy or exceed the current Policy limits. AISLIC may not accumulate additional claims against the United States related to the Bermite Site through assignment, subrogation, or otherwise and claim reimbursement through this Consent Decree.

i.     "Past Response Costs" shall mean, for purposes of this Agreement, all costs, fees, expenses, or other amounts incurred or paid by AISLIC through January 31, 2010 under the Policy, or otherwise, that AISLIC sought to recover from the United States in the Consolidated Actions or that AISLIC could have otherwise sought from the United States in connection with the Bermite Site.

j.     "Plaintiff" or "AISLIC" shall mean AIG Specialty Insurance Company, f/k/a American International Specialty Lines Insurance Company and Chartis Specialty Insurance Company, and its parent, subsidiaries, designees, agents, attorneys, assigns, insurers, reinsurers, or any other entity who may have rights or assert a claim arising in any way from AISLIC's obligations under the Policy in connection with the Bermite Site or the Consolidated Actions.

k.     "Prior Rulings" shall mean the following Court orders in the Consolidated Actions: ECF No. 29 (Order Denying United States' Motion to Dismiss (filed in 06-CV-4686-AHM-RZx), signed on 2/05/2007 and docketed on 2/06/2007); ECF No. 79 (Order Denying United States' Motion for Review of Magistrate Judge's Discovery Order (filed in 09-CV-1734-AHM-RZx), docketed 12/14/2009); ECF No. 180 (Findings of Fact and Conclusions of Law (Liability Phase) (filed in 09-CV-

1   1734-AHM-RZx), signed and docketed on 6/30/2010); ECF No. 319 (Findings of

2   Fact and Conclusions of Law (Allocation Phase) (filed in 09-CV-1734-AHM-RZx),

3   signed and docketed on 1/09/2013); ECF No. 321 (Final Judgment), signed and

4   docketed in both 06-CV-4686-AHM-RZx and 09-CV-1734-AHM-RZx on

5   1/31/2013).

6        l.      "Tenders" shall mean the set of documents by and through which

7   Whittaker's environmental consultant managing the clean-up and remediation of the

8   Bermite Site, currently AMEC Geomatrix ("AMEC"), submits to AISLIC groups of

9   invoices reflecting work at or related to the Bermite Site for coverage consideration,

10  processing, and payment.

11       m.      "United States" shall mean the United States of America, and all

12  agencies, departments, and instrumentalities of the United States, including, but not

13  limited to, the United States Department of the Army, United States Department of

14  the Navy, United States Department of the Air Force, United States Department of

15  Defense, Defense Contract Management Agency, Defense Contract Administration

16  Services, United States Army Corps of Engineers, and any of their predecessors or

17  successors.  The term "United States" shall also include all employees, contractors,

18  attorneys, or agents of the United States, to the extent that such parties directed,

19  conducted, supervised, participated in, or otherwise were involved with any activity at

20  or related to the Bermite Site while acting on behalf of the United States.

21       3.      Release and Covenant Not To Sue by AISLIC.

22       a.      Upon approval and entry of this Agreement by the Court, AISLIC hereby

23  forever releases, discharges, and covenants and agrees not to assert (by way of the

24  commencement of an action, the joinder of the United States in an existing action or

25  in any other fashion) any and all claims, causes of action, suits or demands of any

26  kind whatsoever in law or in equity which AISLIC may have had, or hereafter have,

27  including, but not limited to the Consolidated Actions or any other claims under

28  CERCLA sections 107, 112, or 113, against the United States for Covered Matters.

6

**[PROPOSED] CONSENT DECREE**

1 To the extent that this provision is ever construed as a "general release" under

2 California law, AISLIC expressly waives the applicability to this Agreement of

3 California Civil Code section 1542.

4        b.      Notwithstanding Paragraph 3.a. or any other provision in this

5 Agreement, AISLIC does not release and specifically reserves its right to assert

6 claims for breach of this Agreement against the United States.

7    4.    Appeal/Prior Rulings.  The Parties have agreed to the contingent

8 dismissal of their cross-appeals pending in the United States Court of Appeals for the

9 Ninth Circuit subject to the Court's approval of this Agreement.  However, the Parties

10 continue to dispute and deny the bases for and validity of certain aspects of the Prior

11 Rulings in the Consolidated Actions.  Nothing in this Agreement shall constitute a

12 waiver of either Party's right to argue in any matter that any aspect of the Prior

13 Rulings is factually or legally correct or incorrect in any respect.  As between them,

14 the Parties agree that neither Party will assert or argue that the Prior Rulings have

15 legal force or precedential effect against the other Party in any other matter.

16    5.    Warranties and Indemnification by AISLIC.  AISLIC warrants and

17 certifies that: (1) it has not recovered any of its alleged costs from the United States

18 under any Federal Contract; (2) AISLIC has not assigned its rights to recovery or

19 claims under the Policy, or any part of such claims, to any third party; and (3) AISLIC

20 has made no claim for reimbursement of its costs or payments under the Policy to any

21 third parties other than the United States and Chubb Custom Insurance Company.  In

22 light of these warranties, and in consideration for the United States' payments

23 provided for in this Agreement, AISLIC further agrees to indemnify and hold

24 harmless the United States against any and all past or future claims asserted by any

25 party against the United States relating to the Bermite Site that arise from the Policy,

26 except as otherwise noted below in paragraph 5.a.

27        a.      AISLIC's agreement to indemnify and hold harmless the United

28 States under Paragraph 5 of this Consent Decree does not apply to any and all claims

7

**[PROPOSED] CONSENT DECREE**

asserted by Whittaker Corporation in the action styled *Whittaker Corporation v. United States of America*, Case No. CV-13-01741 FMO (JCx) in the United States District Court for the Central District of California, or to any and all claims asserted by Chubb Custom Insurance Company in the action styled *Chubb Custom Insurance Company v. United States of America*, Case No. CV-13-01158 GW (MRWx).

6. Protection Against Claims.

a. The Parties acknowledge and agree that the payments to be made by the United States pursuant to this Agreement represent a good faith compromise of disputed claims held by AISLIC and that the compromise represents a fair, reasonable, and equitable discharge of the Covered Matters addressed in this Agreement. With regard to any claims for costs, damages, or other claims against the United States for Covered Matters under or addressed in this Agreement, the United States is entitled to, as of the Effective Date and provided that the United States makes the payment to AISLIC pursuant to Paragraph 7.a. of this Agreement, contribution protection pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f), the Uniform Comparative Fault Act, and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United States' liability to persons not party to this Agreement. Except as specifically provided herein, the United States reserves all its rights to obtain contribution, or otherwise recover costs or damages, from persons not party to this Agreement, and any such rights are preserved.

b. After signing the Agreement, AISLIC agrees to neither oppose the United States' entry of this Consent Decree by the Court nor challenge any provision of this Consent Decree. The Parties further agree to join in and/or support, as may be appropriate, such legal proceedings as necessary to secure the Court's approval and entry of this Agreement.

7.    Payment of Past Response Costs.

  a.    Within ninety (90) days after the Effective Date of this Agreement, the United States will pay $2,034,958.82 to AISLIC (the "Past Cost Payment"). Payment shall be by Electronic Funds Transfer in accordance with instructions provided by AISLIC, provided these instructions comply with federal and any other applicable law.

  b.    If the Past Cost Payment is not made in full within ninety (90) days after the Effective Date of this Agreement, then interest on the unpaid balance shall be paid commencing on the 91st day after the Effective Date. Interest shall accrue at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26 of the United States Code.

  c.    Payment by the United States is subject to the availability of funds appropriated for such purpose. No provision of this Agreement shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341.

8.    Payment of Future Response Costs.

  A.    Initial Claim For Future Response Costs Reimbursement

  AISLIC will send the United States an accounting of Future Response Costs paid from February 1, 2010 through June 30, 2013, including all supporting documentation from the Tenders and proof of AISLIC's payment, as soon as practicable but no later than twenty-eight (28) days after the Court's approval of this Agreement ("AISLIC's Initial Claim for Future Response Costs Reimbursement"). The United States will review AISLIC's Initial Claim For Future Response Costs Reimbursement in accordance with the process described in Paragraphs 8.B.b. – i. of this Agreement.

[PROPOSED] CONSENT DECREE

## B. Bi-Annual Review

After AISLIC submits the Initial Claim For Future Response Costs Reimbursement, the following process shall apply to claims to recover amounts AISLIC continues to pay that are recoverable under this Agreement:

a.    On or before February 15 of each calendar year, AISLIC will send the United States an accounting of Future Response Costs paid from July 1 to December 30 of the preceding calendar year (each bi-annual accounting is referred to hereafter as a "Statement").  On or before August 15 of each succeeding calendar year, AISLIC will send the United States a Statement that includes an accounting of Future Response Costs paid from January 1 to June 30 of that calendar year.  Except as otherwise provided in this Agreement, in no event shall AISLIC submit or be entitled to recover from the United States a Future Response Cost more than two years after it has been paid by AISLIC.

b.    Included with each Statement shall be copies of invoices, a description of the work underlying the invoices, copies of relevant reports to the California Department of Toxic Substances Control ("DTSC") or other regulators, and any other documents sufficient to support the recoverability of the claimed Future Response Costs.  AISLIC's bi-annual submissions shall include all supporting documentation from the Tenders and proof of AISLIC's payment.  Each Statement shall also contain a certification by AISLIC under penalty of perjury that each claimed item qualifies as a Future Response Cost and was paid by AISLIC.  AISLIC shall also certify that it has not recovered any of the claimed Future Response Costs from the United States or from any other source, including other insurers.

c.    Within one hundred and twenty (120) days of the United States' receipt of each Statement, the United States shall reimburse AISLIC for thirty-three percent (33%) of the Future Response Costs contained in the Statement that are properly included and supported, except as otherwise provided in Paragraph 8.d. of this Agreement.  Payment shall be made pursuant to Electronic Funds Transfer

10

[PROPOSED] CONSENT DECREE

1   instructions given by AISLIC, provided these instructions comply with federal and

2   any other applicable law.

3         d.    If AISLIC fails to support a Future Response Cost with documentation

4   required in Paragraph 8.b., or otherwise fails to demonstrate that a cost is properly

5   reimbursable under this Agreement, the United States may object, in writing, within

6   one hundred and twenty (120) days of receipt of the Statement, and such objection

7   shall be sent to AISLIC pursuant to Paragraph 11 of this Agreement. Any such

8   objection shall identify the contested Future Response Cost and the basis for

9   objection. In the event of an objection, the United States shall, within the one

10   hundred and twenty (120) day period, remit its share of any uncontested Future

11   Response Costs to AISLIC in the manner described in Paragraph 8.c. After the

12   transmission of any objection pursuant to this Paragraph 8, either Party may initiate

13   the dispute resolution procedures provided in Paragraph 10 of this Agreement. If the

14   United States does not object within one hundred and twenty (120) days of receipt of

15   a Statement, the Future Response Costs reflected within that Statement shall be

16   presumed to be consistent with the NCP.

17         e.    If any payments required to be made by this Paragraph 8 are not made in

18   accordance with the provisions of this Section, interest on the unpaid balance shall

19   accrue from the date on which the payment was due at the rate specified for interest

20   on investments of the Hazardous Substance Superfund established under subchapter

21   A of chapter 98 of Title 26 of the United States Code.

22         f.    Payments of Future Response Costs by the United States are subject to

23   the availability of funds appropriated for such purpose. No provision of this

24   Agreement shall be interpreted as or constitute a commitment or requirement that the

25   United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31

26   U.S.C. §§ 1341-42 and 1511-19, or any other applicable provision of law.

27         g.    If the United States determines for any reason that a Future Response

28   Cost for which reimbursement was made to AISLIC pursuant to this Agreement was

**[PROPOSED] CONSENT DECREE**

1  not properly subject to reimbursement, the United States may demand credit, with

2  interest, of the reimbursement made to AISLIC, which credit shall be applied to

3  AISLIC's demands for Future Response Costs.  In the event a credit in the

4  appropriate amount is not available for any reason, the United States may seek other

5  appropriate relief from AISLIC or the Court.  Within sixty (60) days of receiving such

6  a demand, AISLIC shall credit such prior reimbursement to the United States, with

7  interest from the date of the prior reimbursement to the date of return of those

8  payments, unless AISLIC provides written notice contesting that demand for credit

9  within the sixty (60) day period, in which case the dispute provisions of Paragraph 10

10  shall take effect.  The United States shall not demand credit for any payment of a

11  Future Response Cost more than two years after it has made that payment, except in

12  cases of fraud or bad faith.

13        h.      AISLIC hereby agrees and expressly acknowledges that it is prohibited

14  from including any portion of its alleged costs as either direct or indirect costs or

15  costs paid/reimbursed by the United States, or otherwise, in any invoice, claim, or

16  demand associated with any Federal Contract.

17        i.      A determination by the United States not to object to a Future Response

18  Cost shall not constitute an admission, agreement, understanding, or other indication

19  by the United States that any such cost is a Future Response Cost within the scope of

20  this Agreement, that such cost was necessary or incurred consistent with the NCP, or

21  that such cost is otherwise reimbursable under this Agreement or under any statute,

22  regulation, or other provision or law or equity.

23        9.      Covenant Not to Sue by United States and Reservation.

24        a.      Upon approval and entry of this Agreement by the Court and subject to

25  Paragraph 9.b. of this Agreement, the United States hereby forever releases,

26  discharges, and covenants and agrees not to assert (by way of the commencement of

27  an action, the joinder of AISLIC in an existing action, or in any other fashion) any

28  and all claims, causes of action, suits or demands of any kind whatsoever in law or in

12

**[PROPOSED] CONSENT DECREE**

1  equity which it may have had, or hereafter have, including, but not limited to, claims

2  under CERCLA sections 107, 112, and 113, against AISLIC for Covered Matters.  To

3  the extent that this provision is ever construed as a "general release" under California

4  law, the United States expressly waives the applicability to this Agreement of

5  California Civil Code section 1542.

6      b.    Notwithstanding Paragraph 9.a. or any other provision in this

7  Agreement, the United States does not release and specifically reserves its right to

8  assert against AISLIC, or any other individual or entity, any claims or actions

9  regarding the Bermite Site that may be brought on behalf of the United States

10  Environmental Protection Agency or a natural resource trustee.  Nothing in this

11  Agreement shall constitute or be construed as a waiver, limitation, or release of any

12  claims or causes of action by the United States to enforce any federal laws or

13  regulations in connection with the Bermite Site.  The United States also does not

14  release and specifically reserves its right to assert claims for breach of this Agreement

15  against AISLIC.

16      10.   Dispute Resolution.

17      a.    Any dispute with respect to the United States' obligation to reimburse

18  Future Response Costs under Paragraph 8 of this Agreement shall in the first instance

19  be the subject of informal negotiations between the Parties.  The period for informal

20  negotiations shall last sixty (60) days from the date the United States transmits its

21  objection pursuant to Paragraph 8.d., or AISLIC transmits an intention to contest a

22  demand for credit pursuant to Paragraph 8.g., unless this period is extended by written

23  agreement of the Parties.

24      If the Parties have not reached a resolution of the dispute by the end of the

25  period for informal negotiations, the next step in the dispute resolution process shall

26  be mediation.  After the period of informal negotiations, either party may invoke

27  mediation by notifying the other party that it would like the assistance of a mediator

28  to resolve the dispute.  The Parties shall cooperate to select a mutually-acceptable

[PROPOSED] CONSENT DECREE

1  mediator and thereafter participate in mediation in good faith to resolve the dispute, if
2  possible.  Unless a different time period is selected, the Parties shall endeavor to
3  complete the mediation process within ninety (90) days after selecting a mediator.

4       If the Parties are unable to reach a resolution of the dispute by the end of the
5  mediation process, either party may notify the Court of the dispute and the need for a
6  resolution.

7       b.     In the event informal negotiations are unsuccessful, no Party shall submit
8  or rely on any evidence, in any form, to resolve the disputed Future Response Cost
9  that was not disclosed to the other Party prior to the expiration of the informal
10 negotiation period in Paragraph 10.a., except upon leave of Court or the
11 appointed/agreed mediator.  However, nothing in this Paragraph 10.b. shall preclude a
12 Party from submitting or relying on (i) expert testimony; (ii) factual evidence not in
13 existence at the time of the informal negotiation period; (iii) factual evidence whose
14 existence was not known to the Party at the time of the informal negotiation period; or
15 (iv) evidence that is, or was at the time of the informal negotiation period, exclusively
16 within the possession of the other Party.

17      c.     If a reimbursement is determined to be due pursuant to Paragraph 10.a.,
18 the United States shall pay the sum determined to be due within sixty (60) days of the
19 resolution of the dispute (with accrued interest pursuant to Paragraph 8.e. of this
20 Agreement).  If a credit is determined to be due pursuant to Paragraph 10.a., then the
21 United States shall apply such credit to AISLIC's subsequent claims for
22 reimbursement.  In the event AISLIC makes no subsequent claims for reimbursement
23 exceeding the credit, then AISLIC shall refund any remaining credit to the United
24 States with interest accruing from the date the credit was determined due at the rate
25 specified in Paragraph 8.e., *supra*.

26      11.    Notices.

27      Except for any money AISLIC may receive from Chubb Custom Insurance
28 Agreement pursuant to the Settlement Agreement and Mutual Release dated January

1  6, 2012 by and between AISLIC, Chubb Custom Insurance Company, and Pacific

2  Indemnity Company, AISLIC shall provide notice to the United States within twenty-

3  one (21) days if at any time AISLIC seeks or obtains recovery of Past or Future

4  Response Costs from any source other than the United States or from the United

5  States in any manner other than that provided for by this Agreement.  Any notice

6  required hereunder shall be transmitted by overnight delivery service, telecopier, or

7  electronic mail to each of the undersigned, or in such manner and to such persons as

8  may be designated by a Party hereto in writing to the other Party.

9       12.   Effect of Settlement/Entry of Judgment.

10       a.   This Agreement was negotiated and executed by AISLIC and the United

11  States in good faith and at arms' length and is a fair and equitable compromise of

12  disputed claims, which were vigorously contested and are denied.  This Agreement is

13  not and shall not constitute or be construed as an admission by the United States of

14  any factual allegations made by AISLIC in this Action, an admission of liability, or an

15  admission of any other kind or character whatsoever by the United States.  Neither

16  this Agreement nor the Parties' performance under this Agreement is intended to

17  have, and shall not be deemed to have, any evidentiary or precedential effect in this or

18  any other action involving claims asserted against the United States.

19       b.   Upon approval and entry of this Agreement by the Court, this Agreement

20  shall constitute a final judgment among the Parties in the Consolidated Actions.

21       c.   If for any reason the Court should decline to approve this Consent

22  Decree in the form presented, this Agreement is voidable at the sole discretion of any

23  Party and the terms of the Agreement may not be used as evidence in any litigation or

24  appeals between the Parties or against the Parties.

25       13.   Dismissal with Prejudice of Complaint.  Upon the Court's approval of

26  this Agreement, all claims brought by AISLIC against the United States in the

27  Consolidated Actions shall be dismissed with prejudice.  Each Party shall bear its own

28  litigation and administrative costs and expenses, including attorneys' fees.

[PROPOSED] CONSENT DECREE

1    14.   Integration Provision. This Agreement constitutes the entire agreement

2    between the Parties with respect to the matters covered herein.  All prior discussions,

3    drafts, and writings are superseded by this Agreement and may not be used to vary or

4    contest the terms of the Agreement.

5    15.   Joint Drafting. This Agreement has been jointly negotiated and drafted.

6    The language of this Agreement shall be construed according to its fair meaning and

7    without regard to the role that either party played in the preparation of this

8    Agreement.  Each Party has been advised by its own counsel in connection with the

9    Consolidated Actions and this Agreement, and each Party agrees that it is not relying

10   on any representations or omissions of the other Party in signing this Agreement,

11   other than those representations contained within this Agreement.

12   16.   Representative Authority. The individuals signing this Agreement on

13   behalf of the Parties hereby certify that they are authorized to bind their respective

14   party to this Agreement.

15   Dated: May 23, 2014

16                                    AMERICAN INTERNATIONAL
                                      SPECIALTY LINES INSURANCE
17                                    COMPANY n/k/a AIG SPECIALTY
                                      INSURANCE COMPANY

18

19                                    By: _____
                                          CINDY HUNTER
20

21   Dated: May 29, 2014

22                                    SAM HIRSCH
                                      Acting Assistant Attorney General
23                                    Environment and Natural Resources Division
                                      United States Department of Justice

24                                    By: _____
                                          MICHAEL C. AUGUSTINI
25                                        MARTHA C. MANN

26                                    Attorneys for Defendant United States of
                                      America
27

28

                                      16

1    SIGNED, SO ORDERED, and ENTERED this 2nd day of May 2014.

                                     _____
                                     GEORGE H. KING
                                     Chief United States District Judge

                                     17
**[PROPOSED] CONSENT DECREE**